**HON. ROBERT J. BRYAN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FILED _____ENTERED
LODGED_____RECEIVED

Received From
SEATTLE

NOV 14 2001

NOV 09 2001  **MR**

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

CORY L THOMAS, ABDULLAH ALI,
MUHAMMAD ALEXANDER, and ISMAIL
RAHMAAN,

       Plaintiffs,

CITY OF TACOMA, a municipal corporation;
TACOMA POLICE DEPARTMENT, BRIAN
EBERSOLE; JAMES O HAIRSTON, RAY
CORPUZ, KRISTI BUCKLIN; NATHAN
CLAMMER, TERRY KRAUSE, ROBERT
LUKE, DAVID PECK, STEVE O'KEEFE;
ROBERT BAKER, JOE BUNDY, RONALD
TENNYSON, TODD TERHAR, DAVID
ANDERSON, SHEPPARD CLARKE; KEITH
MILLER; JOHN BAIR; DANIEL GRANT
MICHAEL ROWBOTTOM,

       Defendants

NO CO1-5138RJB

FIRST AMENDED
COMPLAINT FOR DAMAGES
(CIVIL ACTION) -- VIOLATIONS
OF CIVIL RIGHTS



CV 01 05138 #00000111

## INTRODUCTION

    1    This is a civil rights action for money damages against the City of Tacoma

Police Department ("City" or "TPD") Tacoma Chief of Police James Hairston, Tacoma

Mayor Brian Ebersole, Tacoma City Manager Ray Corpuz and Tacoma Police Officers

Kristi Bucklin, Nathan Clammer, Terry Krause, Robert Luke, David Peck, Steve O'Keefe,

Robert Baker,  Joe Bundy, Ronald Tennyson, Todd Terhar, David Anderson. Sheppard

1

LAW OFFICES
LEMBHARD G HOWELL P S
PACIFIC BUILDING, SUITE 205
720 THIRD AVENUE
SEATTLE WASHINGTON 98104
TELEPHONE (206) 623-5296

Clarke, Keith Miller, John Bair, Daniel Grant and Michael Rowbottom (Collectively "Defendant Officers") for violations of state tort law and of the plaintiffs' constitutionally guaranteed rights The City of Tacoma Police Department, Brian Ebersole, James O Hairston, and Ray Corpuz are being sued for developing and maintaining the policies and customs that caused the deprivation of rights described in this complaint, including failing to discipline the above-named officers in earlier incidents, engaging in a conspiracy among defendants to continue to deprive plaintiffs of their constitutional rights, and having reckless disregard of TPD's violation of plaintiffs' constitutional rights

## JURISDICTION

2      This action is brought pursuant to 42 U.S.C §1983, §1985, §1986, and §1988 for violations of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and various state and common law claims   Jurisdiction is conferred upon this court pursuant to 28 U S C §1343, et seq

3.      There exists a common nucleus of operative facts as to plaintiffs' state and federal claims.  As a consequence, this court has pendent jurisdiction over the state claims pursuant to 28 U S C. §1367

## PARTIES

4.      Plaintiff Abdullah Ali is a resident of Tacoma, Pierce County, Washington

5      Plaintiff Cory Thomas is a resident of Tacoma, Pierce County, Washington

6      Plaintiff Muhammad Alexander is a resident of Tacoma, Pierce County,

2

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Washington

7     Plaintiff Ismail Rahmaan is a resident of Lithonia, Georgia, but at all times relevant to his claims, he was a resident of Tacoma, Pierce County, Washington

8.     Defendant Tacoma Police Department is a law enforcement agency of the City of Tacoma

9.     Defendant City of Tacoma is a municipal corporation in Pierce County, Washington and operates the Tacoma Police Department.

10     Defendant Brian Ebersole is the Mayor of Tacoma, and upon information and belief is a resident of Tacoma and is being sued individually and in his official capacity

11     Defendant James O Hairston is the Chief of Police of Tacoma, and upon information and belief is a resident of Tacoma and is being sued individually and in his official capacity

12.     Defendant Ray Corpuz is the City Manager of Tacoma, and upon information and belief is a resident of Tacoma, and is being sued individually and in his official capacity

13     Defendant Kristi Bucklin upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

14.     Defendant Nathan Clammer upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department.

15.     Defendant Terry Krause upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

16.     Defendant Robert Luke upon information and belief is a resident of Tacoma,

3

LAW OFFICES
LEMBHARD G. HOWELL, PS
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Pierce County, Washington and is an employee of defendant Tacoma Police Department

17    Defendant David Peck upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

18    Defendant Steve O'Keefe upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

19.    Defendant Robert Baker upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

20    Defendant John Bair upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

21    Defendant Joe Bundy upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

22    Defendant Ronald Tennyson upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

23    Defendant Daniel Grant upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

24    Defendant Michael Rowbottom upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

25    Defendant Todd Terhar upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

26    Defendant David Anderson upon information and belief is a resident of

4

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

27    Defendant Sheppard Clarke upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

28    Defendant Keith Miller upon information and belief is a resident of Tacoma, Pierce County, Washington and is an employee of defendant Tacoma Police Department

29.    Defendant City of Tacoma employed defendant officers and other officers involved at all times material hereto  The officers were acting under the color of law in their capacities as police officers   Defendant officers and each of them acted with intentional and/or reckless disregard of plaintiffs' rights

## CLAIMS FOR DAMAGES

30    Claims for Damages were properly filed with the defendant City of Tacoma pursuant to Washington law   More than sixty (60) days have elapsed since the filing of those claims

## FACTS

31    The following facts demonstrate defendant officers' pattern and practice of racial profiling, abuse, intimidation, assault, battery, false arrests, false reporting, false testimony, malicious prosecution, violation of constitutional rights, outrageous conduct, criminal conduct, and retaliation, which have been tolerated, ratified, adopted and excused by Tacoma Police Department and City of Tacoma officials with reckless disregard of

5

LAW OFFICES
LEMBHARD G  HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Tacoma Police Department's violation of plaintiffs' constitutional rights

## A. <u>CORY THOMAS</u>

32     On September 28, 1998, at South 16th Street between M and L Streets in Tacoma, plaintiff Cory Thomas (Mr Thomas) was pulled over while he was driving his car by Tacoma Police Officer Robert Baker with the pretext of citing Mr Thomas for failure to yield the right of way and failure to signal, both of which plaintiff had not committed Without probable cause or reasonable suspicion of criminal conduct, Officer Baker forcibly removed Mr Thomas from his vehicle, forced Mr. Thomas on the hood of Mr Thomas' car, and placed a gun to Mr Thomas' neck Tacoma Police Officer David Anderson observed the incident, did nothing to prevent the abuse, and failed to report Officer Baker's actions Mr Thomas filed a complaint with TPD. Mr Thomas did not receive any correspondence from TPD regarding his complaint.

33     On December 10, 1998 at South 21st Street and M Street in Tacoma, Tacoma Police Officer Nathan Clammer pulled over Mr Thomas on the pretext that plaintiff failed to properly signal a lane change or turn Mr Thomas had in fact used his turn signal, and his turn signal was working properly Without probable cause or reasonable suspicion of criminal activity, Tacoma Police Officer Clammer ordered Mr Thomas out of his car, tripped him, placed a gun at his back, told him he was under arrest, handcuffed him, searched his car, and damaged the inside of the car Officer Clammer found no contraband or evidence of criminal activity, issued Mr Thomas a citation for failure to signal, and released him Mr Thomas filed a complaint with TPD Mr Thomas did not receive any

6

LAW OFFICES
**LEMBHARD G HOWELL, PS**
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

correspondence from TPD regarding his complaint

34    On June 14, 1999, Mr Thomas was riding a bicycle at People's Community Center in Tacoma and was stopped by Tacoma Police Officers Ronald Tennyson and William Muse on the pretext that he was "speeding" on the wrong side of the street, without a helmet. There were between 15 to 20 other young people riding bicycles without helmets, but Mr Thomas was the only person who was stopped or cited. The officers searched Mr Thomas, removed money from his jeans, and asked him if it was drug money   An officer told Mr. Thomas that he was young, black, and on hilltop, so it could very well be drug money   Mr Thomas filed a complaint and was told by Lt Woodard of TPD Internal Affairs that he was a victim of selective enforcement and the best thing for him to do would be to move out of the City of Tacoma

35    On July 8, 1999 at South 16th and L Street in Tacoma Mr Thomas was a passenger in a vehicle driven by his girlfriend when Tacoma Police Officers Robert Luke and Nathan Clammer pulled over the vehicle   Mr Thomas and his girlfriend got out of the vehicle   Officer Luke and Officer Clammer ordered Mr Thomas to the patrol vehicle, placed him in handcuffs and put him in the back of the patrol vehicle   The officers told Mr Thomas that he was driving while his license was suspended   However, Mr. Thomas was not driving, and the officers knew that he was not driving, but arrested him anyway   The officers told him to sign the citation for driving while license suspended in the third degree (DWLS), threatening to take him to jail if he did not sign the citation   Mr Thomas was found not guilty of DWLS   Mr Thomas reported and complained of the false charges to TPD   Mr Thomas did not receive any response from TPD regarding Mr Thomas' complaint

7

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

36      On July 29, 1999 while at Judith Harrell's residence at 1207 So 16th Street in Tacoma, Officer Baker arrested Mr Thomas on arrest warrants  Mr Thomas showed Officer Baker court documents evidencing that the warrants had been quashed  Officer Baker took Mr Thomas to jail  When Mr. Thomas was able to post the bail amount, Officer Baker falsely reported that Mr Thomas had committed the crime of harassment with threat to do bodily harm to a law enforcement officer  A jury acquitted Mr Thomas of these charges

37      In December, 1999, Mr Thomas received a criminal complaint charging him with DWLS on November 9, 1999  The "arresting officer" was Officer Clammer  Officer Clammer did not arrest, or even pull over, Mr. Thomas for the alleged crime  Instead Mr Thomas was mailed the criminal complaint  At the criminal trial, Officer Clammer testified he saw Mr Thomas driving a 1986 Chevrolet Caprice, license number 212 EYD  Mr Thomas and three lay witnesses testified that the vehicle was parked inoperable on the side of the street at the time Mr Thomas allegedly drove the vehicle.  The jury found Mr Thomas not guilty

38      On December 7, 1999, the first day of the trial of the July 29, 1999 incident (See ¶ 36) in the early evening Officer Baker drove by Mr. Ali's residence flashing his flood lights and making unprofessional remarks to Mr Thomas    Mr Thomas reported the incident to TPD, but Mr Thomas does not know if TPD took any action

39  In December 1999, Jane Melby, an attorney with the Department of Assigned Counsel, represented Mr Thomas on the July 29, 1999 charge of harassment (See ¶ 36)  Mr Thomas was found not guilty

8

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

40  In December, 1999, Mr Thomas' brother Kemo Thomas (Kemo) was arrested by Tacoma Police Officer Hoffner while Kemo was a passenger in Mr Thomas' vehicle  Mr Thomas was pulled over at 98th Street and Hosmer.  The officer alleged that Kemo was being arrested regarding a robbery  The officers conducted a "felony stop" which includes drawing guns and pointing them at the suspects, ordering the suspects on the ground and frisking the suspects  Even though Mr Thomas was not suspected of being involved in the robbery, he was held at gunpoint, ordered to lay on the ground, and frisked.  Mr. Thomas complied  No charges were filed against Mr Thomas  Mr Thomas was carrying $700 00 in cash which was seized by the Tacoma Police Officers  When Mr Thomas requested the $700 00 be returned to him, the police department refused his request  To date, TPD has not returned the money to Mr. Thomas.

41  On February 18, 2000 between 2·30 p m  and 3 00 p.m., Officer Baker, while in his patrol vehicle, followed Mr Thomas, who was on foot, from 17th Street to 19th Street and from MLK to M Street and made a threatening gesture toward Mr Thomas  On the same date Officer Clammer, while in his patrol vehicle, also followed Mr Thomas and made threatening gestures toward Mr Thomas  Mr Thomas sent a complaint of the officers' conduct to Brian Ebersole, Ray Corpuz and Jim Walton, Assistant City Manager  TPD told Mr Thomas that the police vehicles were being used at the alleged time and date by Officer Clammer and Officer Baker, but Mr Thomas received no other response to the complaint

42  On March 3, 2000 Tacoma Detective Terry Krause was parked in a white van on So. 31st Street in front of Mr Thomas' home  Mr Thomas went up to the window of Detective Krause's van to inquire as to Detective Krause's reason for stopping in front of

9

LAW OFFICES
**LEMBHARD G  HOWELL, P S**
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Mr Thomas' house  Detective Krause pointed his gun at plaintiff and told plaintiff to "Get the fuck away" from the van. Mr Thomas immediately filed a complaint with the Tacoma Police Department  James Hairston sent Mr Thomas a response stating among other things that "There were insufficient facts to determine whether officer Krause pointed his weapon at you     "  Chief Hairston admitted that Officer Krause violated policy by using profanity  The City charged Mr Thomas with DWLS and harassment  A jury convicted Mr Thomas of driving while license suspended in the third degree and harassment  He was sentenced to 90 days in jail, 45 of which could be completed with electronic home monitoring

43  On March 2, 2000 at 10 30 a.m  on 18th street and MLK Way in Tacoma, Mr. Thomas was walking on the street and a police car driven by Tacoma Police Officer Kristi Bucklin deliberately and illegally crossed lanes of traffic on MLK in an attempt to hit Mr Thomas  Tacoma Police Officer Nathan Clammer was a passenger in the vehicle.  Mr Thomas complained to Tacoma Police Department of this incident  He has not received a response.

44     On the evening of March 16, 2000 at Mr Thomas' residence, 3451 South 31st Street, Tacoma Police Officer Steve O'Keefe arrived at Mr Thomas' residence stating he was investigating a noise disturbance.  Mr Thomas was approaching his mailbox when Officer O'Keefe arrived  Mr Thomas informed Officer O'Keefe that he had not been playing any music and had not heard any music in the area  Officer O'Keefe approached Mr Thomas  Mr Thomas backed up until his back was against a vehicle.  Officer O'Keefe told Mr Thomas that he had heard that Mr Thomas had hired Monte Hester to represent him in a civil suit against the City of Tacoma. Officer O'Keefe informed Mr Thomas that

10

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623 5296

he was not worried about any civil suit, and Officer O'Keefe pushed Mr Thomas in the forehead with such force that the back of Mr Thomas' head struck the roof of the vehicle causing injury to Mr Thomas. Mr Thomas requested that Officer O'Keefe call his supervisor to the scene to which Officer O'Keefe told Mr Thomas that there was not a supervisor on duty. Officer O'Keefe did call for back-up and Officer Paul Jagdinski responded Mr Thomas then telephoned Mr Ali to come to the scene, at which time Officer Jagidinski said to Officer O'Keefe "Let's get out of here " The officers left Officer O'Keefe returned approximately five minutes after the two officers had left, and he was rude and abusive to Mr Thomas and his family Later that evening, Mr Thomas went to the emergency room at St Joseph's Hospital to seek treatment for the injury to the back of his head The emergency room physician diagnosed Mr Thomas with a concussion

45. On April 8, 2000 between noon and 4·00 p m. Tacoma Police Officer Todd Terhai drove past Mr Thomas' home several times displaying the obscene gesture of his middle finger so that Mr Thomas would see it. Mr Thomas wrote a complaint to the TPD, to which there was no response.

46 On April 28, 2000 Detective Dave Hoffner called Mr. Thomas' employer making inquiries of Mr Thomas for no purpose other than to harass and intimidate Mr Thomas Mr Thomas wrote a complaint to the TPD, to which there was no response

47 On May 5, 2000 Mr. Thomas had to pay to $3,170 00 in fines to get his license reinstated because of false charges made against him by Tacoma Police Officers.

48 On May 8, 2000 near Mr Thomas' residence Officer Bucklin pulled up next to Mr Thomas' vehicle and stated she was going to cite Mr Thomas for driving while having

11

LAW OFFICES
LEMBHARD G HOWELL, PS
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

a suspended license. Mr Thomas stated to Officer Bucklin that his license was reinstated, but Officer Bucklin said she was going to give Mr Thomas a ticket anyway Mr. Ali came out of the house, at which point Officer Bucklin drove off without citing Mr Thomas Mr. Thomas and Mr Ali filed a complaint with TPD and Ray Corpuz, to which he received no response

49 Throughout the time period at issue in this complaint, several Tacoma Police Officers on several occasions have driven slowly past Mr Thomas' home and signaled obscene gestures at Mr Thomas and the other residents of Mr Thomas' home

50 On the evening of May 19, 2000 at South 19th Street and M in Tacoma Mr Thomas was falsely arrested under the pretext of driving while license suspended, violation of a noise ordinance and felony eluding Mr Thomas was not driving with a suspended license, was not violating the noise ordinance, and was not eluding police After Mr Thomas was arrested, he was slammed on the ground, his ankles and wrist were twisted; he was repeatedly assaulted by various Tacoma Police Officers Mr. Thomas cried for help The officer who was slamming plaintiff's head to the ground started choking Mr. Thomas Mr Thomas was handcuffed and hog-tied Someone placed a gun and a clip on the ground next to Mr Thomas. A Tacoma Police officer said, "He has a gun, shoot him now " Mr Thomas pleaded "Please don't let them kill me." An African-American Tacoma Police Officer threw himself over Mr Thomas and said "Don't shoot It's not his gun " A Tacoma Police Officer slammed Mr Thomas' head on the top of a police car After Mr Thomas lay handcuffed in a police vehicle Sgt. David Peck punched Mr Thomas in the eye Mr Thomas reported the beating on Monday, May 22, 2000 to Chief Hairston and others. Mr

12

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Thomas has not received any response to his complaint from the Chief or anyone else at TPD

51. On May 22, 2000 Mr. Ali, Mr Thomas, Patricia Smith, and other members of the Ali family and the community went to City Hall to meet with City officials regarding the May 19, 2000 incident   Eventually, a meeting was scheduled that day with the City Manager, Chief Hairston, and City Council member Bill Moss   The meeting lasted approximately one hour  Mr Ali and Mr Thomas were assured that the City officials would investigate the incident   Neither Mr Ali nor Mr. Thomas were notified of the City's position regarding the officers' conduct until October, 2000 when they received correspondence from Assistant Tacoma Police Chief Darland who stated that the officers were justified in their actions.

52. On May 23, 2000 Tacoma Police vehicle #936 pulled directly up to Mr. Thomas' vehicle (bumper to bumper) while Mr Thomas was parked at Judith Harrell's residence, 1207 So  16th   Mr Thomas locked his door and sounded his horn until residents came on the porch at which time the police vehicle left

53  On May 24, 2000 Mr Thomas, while driving to Mr Ali's house, was cut off in traffic on MLK and 19th Street by a Tacoma Police vehicle which proceeded slowly to Mr Ali's home  Mr Thomas proceeded a reasonable distance to Mr. Ali's home  Mr Thomas filed a complaint with TPD, to which he has received no response

54  On June 1, 2000, Mr Thomas was driving his vehicle being followed by several Tacoma Police vehicles. The police vehicles guided Mr Thomas into a Rite Aide parking lot  Mr Thomas parked his vehicle and got out of his vehicle, at which time several officers

13

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

drew their weapons and pointed them at Mr Thomas and his passenger, Ishmail Rahmaan Mr Thomas asked if he could go into the Rite Aid and an officer said that he could Mr Thomas then went into the Rite Aid, purchased a disposable camera, and when Mr Thomas had come out of the Rite Aid, the officers had holstered their weapons Mr Thomas took pictures while the officers left the scene The officers did not cite Mr Thomas for any infraction Mr. Thomas was not charged with any crime. Mr Thomas was not given any explanation as to why the officers had drawn their weapons or had guided him into the Rite Aid parking lot Mr Thomas filed a complaint with TPD, to which TPD has not responded

55. On June 9, 2000, Mr. Thomas received a call from Tacoma Municipal Court Judge Gary Sullivan's bailiff informing him (1) that he must appear for a hearing at Judge Sullivan's court on June 14, 2000 and (2) that he need not appear for a previously scheduled hearing on June 12, 2000

56 On June 14, 2000 plaintiff attended the court hearing in Judge Sullivan's court The hearing was continued That same day Mr Thomas met with an officer from Internal Affairs Mr Thomas was also present at another meeting with Tacoma Police Lieutenant J. Walker and Sergeant Ruiz On Mr Thomas' way home from the meeting, he was arrested for three misdemeanor warrants for failing to appear at Judge Sullivan's court on June 12, 2000.

57 On June 15, 2000 Mr. Thomas was released from jail because Tacoma Municipal Court had erred in failing to set over all cases Mr Thomas walked to Mr Ali's residence and was followed by a Tacoma Police Officer in a vehicle with license number 16793D Approximately halfway from the jail to Mr Ali's, another police car followed Mr. Thomas

14

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

and the first police car veered off discontinuing pursuit  This was done to harass and intimidate Mr Thomas

58   In June, 2000 while Mr Thomas was driving with Muhammad Alexander as a passenger, he was stopped by Officers Tennyson and Maule.  The officers alleged that Mr Thomas had illegally backed down the street  While Officer Tennyson detained Mr Thomas and Mr. Alexander, Officer Tennyson (1) held his gun partially out of his holster in an effort to harass and intimidate Mr Thomas and Mr. Alexander and (2) threatened to take them into custody  Officer Tennyson told Mr Thomas that Mr Thomas did not have any photographs of May 19, 2000, so Mr Thomas could not prove that Officer Tennyson did anything wrong  Mr Thomas wrote a complaint to the TPD, to which he has received no response

59.  On July 13, 2000 Officer Bucklin petitioned for and received a temporary restraining order against Mr Thomas and Mr Ali  A show cause hearing was held and based on Officer Bucklin's testimony, a Pierce County Commissioner ordered that Mr Ali is restrained from being within 150 feet of Officer Bucklin  The Commissioner denied Officer Bucklin's petition with respect to Mr Thomas

60  On August 12, 2000, Mr Thomas was turning right from 19th Street onto Sheridan Street  Sheridan Street is a narrow street, and at the time cars were parked on both sides of the street  As Mr Thomas was turning onto Sheridan, Officer Baker was stopped at the intersection facing the opposite way Mr. Thomas was turning  Because of the narrowness of Sheridan Street, Mr Thomas could not complete his turn without Officer Baker proceeding into the intersection. As Officer Baker passed Mr Thomas, he called Mr

15

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Thomas a "nigger" and made obscene gestures to Mr Thomas  Mr Thomas was on his way to Keith and Judith Harrell's  Officer Baker along with Officer Habib pulled in behind Mr Thomas  Officer Habib shined his flood lights into the back of Mr Thomas' vehicle  Mr Thomas attempted to videotape the activities of the officers, when one of the officers ordered him to turn over the video camera to the officer.  Mr. Thomas refused to turn over the video camera but took still photographs instead of videotaping  Officer Habib drove away from the scene  Mr Thomas was not cited for any infraction, nor was he charged with any crime  Mr Thomas filed a complaint with TPD, to which TPD, to which he has received no response

61  On September 3, 2000, Mr Thomas was pulled over by Officer Bundy  During the stop, Officer Bundy acted unprofessionally by laughing and ridiculing plaintiff  Officer Bundy cited Mr. Thomas for speeding -- a $480 00 ticket  Over 12 police vehicles responded to the traffic stop  Mr. Thomas contested the infraction, and the infraction was found not committed  Officer Bundy gave testimony at the hearing  Mr Thomas filed a complaint with the TPD, to which he has received no response.

62  On September 16, 2000 Mr Thomas received a citation in the mail for "following too closely "  Officer Baker was alleged to be the person Mr Thomas had  followed too closely on September 12, 2000. Mr Thomas did not commit the infraction  Officer Baker testified at the hearing  The judge held the citation was committed  Mr Thomas filed a complaint with the TPD, to which there was no response

63  On September 29, 2000 during Mr Thomas' trial for the criminal charges arising from the May 19, 2000 incident, some of the Tacoma Police Officers who were involved in

16

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

the May 19, 2000 incident (Officers Miller and Clarke) came to Mr Ali's front door without a warrant, without probable cause, and without consent of any of the residents of the house The officers came to the home on a report that an Hispanic woman, who had been assaulted two blocks away, had run into Mr. Ali's home   Officers went into the garage and the backyard without consent of Mr Ali.  When the police were searching the home, which is also a daycare, parents were picking up their children from daycare.

64.  On October 9, 2000, Mr. Thomas was driving a van with his cousins Saudiah Muhammad and Rasul Muhammad, riding as passengers  He was picking up Rasul from his tutor's house  After Mr. Thomas noticed a Tacoma Police vehicle behind him which had activated its overhead lights, Mr Thomas activated his right turn signal and turned right on the next street and pulled over to the curb.  Immediately, three police vehicles joined the officer who had pulled over Mr Thomas   The officers drew their weapons as they approached the van  Officers directed their flashlights into the windows of the van with their guns aimed inside the van. An officer approached Mr Thomas who was in the driver's seat, and asked Mr Thomas for his license and registration  Mr Thomas gave them to the officer  Mr. Thomas was held for approximately 30 minutes  During this time Saudiah and Rasul were scared and crying  Mr. Thomas telephoned Mr Ali when he was pulled over, and Mr Ali and Ms Smith came to the scene and found Mr. Thomas and the children being detained by the officers  Mr Ali videotaped the scene  Mr Thomas was cited for failing to signal a turn and failing to provide his driver's license.  Officers left the scene without further incident. At the contested hearing on the infraction, Mr Thomas was not allowed to show the videotape Mr Ali had recorded, and he was found to have committed the

17

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

infraction

65. In October, 2000 Mr Thomas went to trial on the charges of violation of noise ordinance, resisting arrest, and obstructing related to the May 19, 2000 incident  He was found guilty based on the officers' false testimony, and Mr. Thomas was sentenced to nine days of community service

66  On October 26, 2000 Mr Thomas received another citation in the mail from Officers Bucklin and Clammer for "driving too fast for conditions" alleged to have occurred on October 8, 2000  The contested hearing was held at the same time as the hearing described in ¶ 64 and the infraction was found committed but the court refused to admit the videotape

67  On December 9, 2000, at approximately 10:30 p m., Mr Thomas left his home at 1216 S. 19th Street in his vehicle to go to Mr Ali's home at 1909 S "M" Street  On his way to Mr Ali's home, he noticed he was being followed by a TPD patrol vehicle which did not have its overhead lights or siren activated  Mr Thomas came to the front of Mr Ali's house and parked his car along the curb  Mr Thomas opened his door slightly and immediately an officer wedged a gun between the door and the body of the vehicle  Mr Thomas pushed the gun away, got out of the vehicle, and ran toward Mr Ali's porch  Mr Thomas yelled "get the camera" so that the officers' actions could be documented  The officers grabbed Mr. Thomas on the porch, pepper sprayed him twice, and kicked him in the chest area  Mr Thomas was placed in a police vehicle and taken to a vacant lot, where he was taken out of the vehicle where police officers told him "that's bullshit" and "don't fuck with us." Mr Thomas was pepper sprayed a third time, and a portion of the pepper spray went into his

18

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623 5296

mouth He was again kicked in the stomach and chest area One officer stated, "He's not breathing" Mr Thomas was placed in the backseat of the police vehicle and taken to the hospital emergency room Medical personnel at the hospital showered his eyes in order to alleviate the pain from the pepper spray Mr. Thomas was then taken to jail where he remained until he was released on $6,000.00 bail Upon release, Mr Thomas went to Allenmore Hospital where he was diagnosed with blunt abdominal trauma The officers involved were Officer Robert Baker, David Grant, Michael Rowbottom and Sgt Krause. Thomas was incarcerated for felony eluding, negligent driving, and resisting arrest There were no charges filed for the felony eluding and resisting arrest The charge of negligent driving was dismissed on February 21, 2001.

68. On February 21, 2001, Mr Thomas received a message at Consolidated Electrical Distributors (CED), his place of employment, that he was to call the General Employment, his employer, as soon as possible. He was informed that his supervisor had been contacted by a Tacoma police officer who accused Mr Thomas of reckless driving in a company vehicle Mr Thomas' duties at CED included driving a van and a flat bed truck to deliver electrical supplies. As a result of the complaint by the officer, who was later identified as Officer Tennyson, Mr. Thomas was terminated. Later that day, Mr Thomas attended a 3 00 p m court date to defend against the December 9, 2000 negligent driving charge See 67 ¶ above The judge dismissed the charges against Mr Thomas When Mr Thomas walked out of the courtroom and into the hallway of the courthouse, he was arrested by Officer Tennyson and Officer Baker Mr Thomas saw Lieutenant Justice, Sergeant Scruggs and Sergeant Krause standing together witnessing Officer Tennyson and Officer Baker's arrest

19

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Mr Thomas  Mr Thomas was taken to the jail and booked on reckless driving charges Officer Tennyson told Mr. Thomas that Mr Thomas had attempted to run Officer Tennyson off the road.  Officer Tennyson told the booking officer that the incident occurred on Highway 16  Mr. Thomas asked Officer Tennyson where on Highway 16 the incident allegedly occurred, to which Officer Tennyson replied "Gig Harbor." The booking officer asked Officer Tennyson if Gig Harbor was in Officer Tennyson's jurisdiction, to which Officer Tennyson replied that his jurisdiction included the entire State of Washington Officer Baker stated sarcastically that he wished Mr Ali was present so the officers could have "pushed his buttons" and arrested Mr. Ali as well  Mr Thomas was released on $500.00 bail  A jury in Gig Harbor found Mr Thomas not guilty of the reckless driving charge.  Mr Thomas filed a complaint with the Tacoma Police Department Internal Affairs and has received no response

69  Chief Hairston, City Manager Ray Corpuz, and Mayor Ebersole were informed of incidents prior to the Gig Harbor incident set forth above, but refused to take any action or create any policy or procedure which would eliminate or curb the Tacoma Police Officers' continued and persistent violation of Mr Thomas' civil rights  Each official has a duty to ensure that the police officers do not violate the civil rights of Tacoma residents, including plaintiffs. The officials have a duty to manage and operate a law enforcement agency which (1) respects the civil rights of Tacoma residents, including plaintiffs, (2) follows the law, (3) responds properly to citizen complaints, and (4) grants each resident his right to equal protection and benefits of the laws

20

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

## B. **ABDULLAH ALI**

70.   Mr Ali and his family have been the subject of continued abuse, harassment and civil rights violations at the hands of the Tacoma Police Department and its officers   Mayor Ebersole, Ray Corpuz and Chief Hairston know of the officers' actions complained of in this complaint but have not disciplined or properly investigated the series of misconduct by TPD

71   On March 10, 1999, at approximately 9.00 a m  on South 10th Street and MLK at People's Park, Officer Robert Luke approached Mr Ali, called Mr Ali "Boy", a liar, and a trouble maker and threatened to give Mr. Ali a ticket every time he saw Mr Ali

72   Mr. Ali filed a complaint with the TPD regarding Officer Luke's threats and unprofessional and rude conduct   Captain Meeks of the TPD justified Officer Luke's actions stating, "Tacoma Police Department makes social contacts throughout the city on a daily basis " Mr. Ali was not informed whether any disciplinary action was taken against Officer Luke

73.   On May 8, 2000 Officer Bucklin pulled over Mr Thomas   See ¶ 48 above   After Mr Thomas and Mr Ali filed their complaints with TPD against Officer Bucklin, Mr Ali received a criminal complaint for obstructing a law enforcement officer.  Mr Ali was found guilty based on Officer Bucklin's testimony.  He was sentenced to 80 hours of community service

74   On May 9, 2000, Mr Ali saw Judy Cunningham and Cinquata Scott being arrested by Officer Bucklin   Mr Ali approached the scene and advised Ms  Cunningham and Ms Scott of their civil rights with respect to Tacoma Police   Mr. Ali was later charged with, and

21

LAW OFFICES
**LEMBHARD G HOWELL, PS**
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623 5296

convicted of, obstructing a law enforcement officer based on Ms Bucklin's testimony

75  On the evening of May 19, 2000, at South 19th and "M" in Tacoma Mr Ali was heading home and saw several police vehicles in front of his home  He saw Mr Thomas in a police vehicle  Mr Ali saw Sergeant Peck whom he knew from a prior meeting  Mr Ali walked up to Sergeant Peck and spat on the ground twice  Sergeant Peck told other officer to "get" Mr Ali and place him under arrest  Sergeant Peck took Mr Ali to the ground, grabbed Mr Ali around his neck and choked him  Sergeant Peck took out a gun which was hidden in a pocket on his belt and held the gun to Mr Ali's head while Mr Ali Mr Ali show that he was unarmed and in compliance with the officers' arrest  Mr Ali was handcuffed and taken to jail  Mr Ali was charged with third degree assault, resisting arrest, and obstructing a law enforcement officer

76.  On July 13, 2000, Officer Kristi Bucklin filed a petition for an order of protection against Mr. Thomas and Mr. Ali  See ¶ 59 above

77.  Mr Ali was charged with and convicted of violating the protective order on two separate occasions

78  The first occasion allegedly occurred on August 11, 2000 as Mr Ali drove his vehicle from a store, he passed a police vehicle  That officer driving the vehicle was Officer Bucklin, but Mr Ali did not know it was Officer Bucklin  He was subsequently arrested for violating the court's order  Mr Ali was incarcerated for several hours and required to post $3,000 00 bail to be released  Based on Officer Bucklin's testimony, Mr Ali was convicted of violating the protection order

79  The second occasion allegedly occurred on September 12, 2000 when Mr Ali was

22

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623 5296

patronizing a store called "Fish House" which is less than two blocks from Mr Ali's home He was leaving the store and talking to the owner of the store, Hassan Muhammad, when an officer told Mr Ali to put his hands on the car and spread his legs Mr Ali was taken into custody and booked into Pierce County Jail where he remained from 11 00 a m until 8:00 p m. and had to post $2,000 00 cash bail to be released Allegedly Officer Bucklin was in the area. Mr Ali did not intend to be in the same area as Officer Bucklin and did not say or do anything to Officer Bucklin Based on Officer Bucklin's false testimony, Mr Ali was convicted of violating the protection order

80    Chief Hairston, Ray Corpuz, and Mayor Ebersole were informed of the incidents set forth above, but refused to take any action or create any policy or procedure which would eliminate or curb the Tacoma Police Officers' continued and persistent violation of Mr Ali's civil rights Each official has a duty to ensure that the police officers do not violate the civil rights of Tacoma residents, including plaintiffs The officials have a duty to manage and operate a law enforcement agency which (1) respects the civil rights of Tacoma residents, including plaintiffs, (2) follows the law, (3) responds properly to citizen complaints, and (4) grants each resident his right to equal protection and benefits of the laws

### C. <u>MUHAMMAD ALEXANDER</u>

81    On June 29, 1998, Officer Baker followed Mr Alexander who was driving a vehicle with Kemo as a passenger Officer Baker did not activate his overhead lights but continued to follow Mr. Alexander. Mr. Alexander, still being followed by Officer Baker, passed Mr Ali who was parked. Mr Ali then followed Officer Baker and Mr Alexander

23

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

When Mr Alexander noticed that Mr Ali was following Officer Baker, Mr Alexander pulled over and came to a stop Officer Baker came to a stop behind Mr. Alexander, and Mr Ali came to a stop behind Officer Baker Mr Ali got out of his vehicle, and immediately Officer Baker left the scene in his police vehicle Mr Alexander was not cited with any infraction or charged with any crime

82   On April 11, 1999 Mr Alexander was walking in the parking lot of the People's Center in Tacoma when he heard Officer Baker telling Rodney Henderson over a loud speaker "get the fuck out of the parking lot" Mr Henderson, who was in his own car, responded that he was not going to leave because he had tape on his back window, and he feared Officer Baker would pull him over if he drove on the street Officer Baker grabbed Mr Alexander by the jacket collar and hit Mr Alexander in the chin. Mr Alexander then grabbed Officer Baker's wrist in self defense. Officer Baker took Mr Alexander to the police vehicle, grabbed Mr Alexander's neck and hit Mr Alexander in the groin Mr Alexander was handcuffed and taken to jail Mr Alexander was charged with assault of Officer Baker during this incident Mr Alexander was released on bail He inadvertently missed a court date, and was charged with felony bail jumping On advice of counsel, Mr Alexander accepted a plea offer, which was to plead guilty to the bail jumping and dismissal of the assault charge

83   On April 16, 1999, Officer Baker was driving a police vehicle with Officer Anderson in the passenger seat following a vehicle driven by Etoi Upchurch in which Mr Alexander was a passenger. Ms Upchurch stopped the vehicle after police lights came on Officer Baker told Ms Upchurch that she was traveling 32 m p h in a 30 m p h zone

24

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

Officer Baker told officer Anderson "that's him" as he arrived at Mr Alexander's passenger window  Officer Baker took Ms Upchurch's license to his car  When Officer Baker returned he told Ms Upchurch that he was going to give her a verbal warning  Mr Alexander and Ms Upchurch were detained for approximately 25 minutes.

84. On May 19, 2000, Mr Alexander was at the scene was at the scene of Mr Thomas' arrest. (See ¶¶ 50 above)  Mr Alexander was sitting on the grass as he was instructed by Mr Ali  Sergeant Peck directed Officer Tennyson to "Get" Mr Alexander  Officer Tennyson grabbed Mr Alexander and put him in a choke hold  Officer Tennyson with the assistance of other officers lifted Mr Alexander off the ground and slammed him into the ground and stomped on Mr Alexander's back.  Mr Alexander was taken to jail where he was held for two hours  Mr Alexander was found not guilty of resisting arrest and obstructing  The City had originally charged Mr Alexander with assault, but later dismissed that charge on its own motion

85  Chief Hairston, Ray Corpuz, and Mayor Ebersole were informed of the incidents set forth above, but refused to take any action or create any policy or procedure which would eliminate or curb the Tacoma Police Officers' continued and persistent violation of Mr Alexander's civil rights  Each official has a duty to ensure that the police officers do not violate the civil rights of Tacoma residents, including plaintiffs  The officials have a duty to manage and operate a law enforcement agency which (1)  respects the civil rights of Tacoma residents, including plaintiffs, (2) follows the law, (3) responds properly to citizen complaints, and (4) grants each resident his right to equal protection and benefits of the laws.

25

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

# D. ISMAIL RAHMAAN

86  On April 11, 1998, Mr. Rahmaan and his friend Aaron Huggins were riding their bicycles to Mr Huggins' house  Officer John Bair approached the boys with another officer, who was in plain clothes, and accused Mr Rahmaan of using a knife in an attempt to steal lawn maintenance equipment from a truck  Officer Bair told Mr. Rahmaan to "drop the knife."  Mr. Rahmaan was confused by the comment and told Officer Blair that he had no knife  Officer Bair grabbed Mr Rahmaan and took him to the ground and put a gun to his head.  Mr Rahmaan was charged with assault in the second degree which was dismissed

87  On December 7, 1999, Mr Rahmaan was in the backyard of his home at 1909 S "M" Street, when he saw an unknown person run through the yard  Officer Baker later came to the backyard where Mr Rahmaan was taking wood into the house  Officer Baker asked Mr Rahmaan, who had wood in both arms "Why aren't you running?" and Mr Rahmaan replied "I live here." Despite the fact that Mr Rahmaan lived at the residence and had wood in his arms, Officer Baker patted down Mr Rahmaan  Mr Rahmaan filed a complaint with TPD, to which he received no response

88  Mr Rahmaan was present at the May 19, 2000 incident  See ¶ 50 above  Mr Rahmaan was at a friend's house when Chermichael Cole told him that the police were "beating up" Mr Thomas.  Mr Rahmaan ran up the street to his home as Mr Ali was pulling up in his vehicle.  Mr Rahmaan sat in the grass as he was instructed to do so by Mr Ali  When Mr Ali was being arrested, Mr Rahmaan stood up to see what was happening  When he stood up, officers sprayed mace in his face and took him to the ground  He was handcuffed and placed in the back of a patrol car while the mace was burning his eyes

26

LAW OFFICES
LEMBHARD G HOWELL, PS
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

After several minutes, he was taken to a vacant lot where an ambulance came to treat his eyes  The treatment increased the pain in his eyes, so he refused further treatment  He was taken to Remann Hall where he was held until the following Monday, May 22, 2000  Mr Rahmaan was convicted of assault in juvenile court.

89   Mr. Rahmaan was present with Mr Thomas at the June 1, 2000 incident at Rite Aid  See ¶ 54 above  The officers drew guns on Mr. Rahmaan as well as Mr Thomas

90.   Chief Hairston, Ray Corpuz, and Mayor Ebersole were informed of the incidents set forth above, but refused to take any action or create any policy or procedure which would eliminate or curb the Tacoma Police Officers' continued and persistent violation of Mr Rahmaan's civil rights  Each official has a duty to ensure that the police officers do not violate the civil rights of Tacoma residents, including plaintiffs  The officials have a duty to manage and operate a law enforcement agency which (1) respects the civil rights of Tacoma residents, including plaintiffs, (2) follows the law, (3) responds properly to citizen complaints, and (4) grants each resident his right to equal protection and benefits of the laws

## CAUSES OF ACTION

## COUNT 1 (ASSAULT)

91   Plaintiffs reallege each and every allegation in the preceding paragraphs

92.   Defendants' actions and inactions constitute assault, which resulted in damages to plaintiffs

## COUNT 2 (DEFENDANT OFFICERS' VIOLATION OF 42 U.S.C. §1983)

93   Plaintiffs reallege each and every allegation in the preceding paragraphs

27

LAW OFFICES
LEMBHARD G  HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

94    Plaintiffs' constitutional rights under the First, Fourth, Fifth, Eight, Ninth and Fourteenth Amendments to the United States Constitution were violated by defendant officers, who acted under color of law in using excessive force against plaintiffs, assaulting plaintiffs, falsely arresting plaintiffs, harassing plaintiffs, maliciously prosecuting plaintiffs and testifying falsely against plaintiffs, invading plaintiff Ali's home without a warrant   As such the defendant officers violated 42 U S C  §1983, which resulted in damages to plaintiffs

95    Defendant officers used force upon the plaintiffs unnecessarily and not for the purpose of maintaining security but rather for the purpose of causing pain and suffering to someone in their custody

96    Defendants, by their actions, deprived plaintiffs of their clearly established right to be free from cruel and unusual punishment.

97    In using cruel and unusual force upon the plaintiffs, defendant officers acted knowingly, willfully, maliciously, intentionally, and sadistically

## COUNT 3 (DEFENDANT CITY OF TACOMA'S VIOLATION OF 42 U.S.C. §1983)

98.  Plaintiffs reallege each and every allegation in the preceding paragraphs

99   City of Tacoma is also liable for violating the plaintiffs' constitutional and federal rights under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution for (1) failing to train its officers with respect to citizens' civil rights, (2) for failing to reprimand, censure, or punish its officers for their violation of citizens' civil rights, for its gross disregard for plaintiffs' civil rights, and (3) for its custom and policy with respect to investigating and responding to citizens' complaints of civil rights violations, specifically

28

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

plaintiffs' complaints  The City's deliberate conduct was the moving force behind its officers

illegal and unconstitutional conduct.  As such, the City violated 42 U S C. §1983, which

resulted in damages to plaintiffs

100. Defendant City of Tacoma, implicitly authorized and approved of the actions of

defendant officers and has

A) Tolerated a pattern of excessive force, violence and misconduct of defendant

officers against various citizens without enforcing proper disciplinary action or reporting

possible criminal conduct of the officers to the proper authorities for prosecution,

B) Covered up the pattern of conduct described above by (i) failing to make full

and complete disclosures of information required by court order, (ii) prosecuting citizens

who were victimized by the violence of defendant officers, (iii) prosecuting citizens on the

basis of false and inadequate evidence, and (iv) failing to perform effective and impartial

internal investigative reports and complaints of police violence,

C) Failed to adequately monitor and evaluate the performance of its officers and

their use of force and deliberate indifference and reckless disregard to the public at large,

including the plaintiffs;

D) Failed to adequately respond to and investigate complaints regarding officer

misconduct by the citizenry, including, but not limited to, complaints regarding harassment,

excessive force, false arrest and threats in order to escape liability, creating a policy, practice,

custom or atmosphere where such illegal and unconstitutional behavior is ratified, condoned

or approved in deliberate indifference and reckless disregard to the rights of the public at

large, including the plaintiffs,

29

LAW OFFICES
LEMBHARD G  HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

E) A policy which allows its officers to engage in conduct that violates the constitutional rights of persons in custody, without fear of reprimand, discipline, or termination creating an atmosphere where such unconstitutional behavior is ratified,

F) A practice or custom of improperly and inadequately investigating complaints by citizens regarding police behavior including, but not limited to, creating an atmosphere where officers violate the constitutional rights of citizens without fear of discipline in reckless disregard and deliberate indifference to the public at large, including plaintiffs, and

G) A policy, practice, or custom of failing to seek criminal prosecution against officers whose behavior violates the laws of the State of Washington and the United States in order to escape liability, in reckless disregard and deliberate indifference to the welfare of the public at large, including the plaintiffs

### COUNT 4 (DEFENDANT OFFICERS AND OFFICIALS' VIOLATION OF 42 U.S.C.§1985)

101. Plaintiffs reallege each and every allegation in the preceding paragraphs

102 On January 26, 1990, plaintiff, Abdullah Ali, sponsored Nation of Islam (NOI) Minister, Louis Farrakhan, to a meeting held at the Temple Theater in Tacoma, Washington, which was attended by 3,000 people The meeting had wide publicity and was featured in the local press The then Mayor of Tacoma, Karen Vialle authorized the presentation of the Key to the City to Minister Farrakhan A dispute developed when a past Tacoma Councilmember, Jack Warnick sought to have the Key taken back. On February 5, 1990, local Muslim Minister Elliot X, indicated in the press that Minister Farrakhan had been misquoted Minister Elliot's wife, Gail Manuel (Sister Marie), was

30

LAW OFFICES
**LEMBHARD G HOWELL, P S**
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

stopped on June 19, 1990 by two Tacoma Police Officers, who claimed that she had failed to stop. A dispute arose when she asked about the tickets they were giving her, and Sister Marie was assaulted by Tacoma Police Officers Ms Manuel was charged with two counts of third degree assault. Ms Manual had strong support from the Black Community, especially the NOI. The officers involved in that occasion were Ross A Mueller and Mark Edmonston

103 A prominent two-page article appeared in the Seattle Times on July 7, 1990, featuring Abdullah Ali with pictures of him beside a portrait of Elijah Muhammad at Your Fish House Restaurant in Tacoma Among other things, the article stated, "Often seen as a fringe militant group, The Nation of Islam has become a force -- locally and nationally -- against the crippling effects of gangs and drugs in the Black Community." The article went on to mention Abdullah Ali as perhaps the best known local member The article by Kate Shatzkin of the Times South Bureau further stated,

> As of late, Tacoma Police and Muslims have had some run-ins that have strained relations The Muslims have charged police with racism and roughing up mosque members, while police say members of the Nation have used race as an excuse to badger the police
>
> Ali has organized a community group to monitor police activity in the area

104 Within less than two months after the attack on Sister Marie, further attacks began on other Muslims in the community, chief among them, the family of Mr. Abdullah Ali On July 31, 1990, members of the Ali family were assaulted and taken to jail Other members of the Islamic community were abused by the Tacoma Police Department At that time, the assaultive officers included Ross A. Mueller, Amy Boardman, William Lowry and

31

LAW OFFICES
LEMBHARD G HOWELL, PS
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 823-5296

Lowry's partner, Officer Roger Crandon.

105   On August 4, 1990, less than one week after the July 31st, 1990 incident, Officers Deccio, Boardman and Mueller brutalized Kenyata and Shawanda again   Officer Mueller was the officer involved with Sister Marie   Officer William Lowry on the way to the Ali residence, stated over the radio, "All units be advised, residence belongs to Mohammad (sic) Ali, known Islamic activist.. "

106. As a result of the police action, Mr Ali and his family were the victims of harassment and abuse by the Tacoma Police Officers   Mr. Ali and some of his family members filed a lawsuit against the City of Tacoma and several Tacoma Police Officers   *See Exhibit A*   The case went to trial and ended in a hung jury   The parties reached a settlement agreement in which TPD

> Agreed that the chief of police will send a letter to Mr Ali confirming that the Tacoma Police Department is currently making available to the public its policies and procedures for internal affairs investigations, that it is making public the results of IA investigations in a summarized form without disclosure of the parties involved, and that it is providing appropriate training on the use of force, warrantless entries, cultural awareness and related matters   The letter will also recite that the investigation into the July 30, 1990 matter will be completed, provided that the complaining parties reasonably cooperate   The parties will cooperate with each other in providing such documents as may be necessary to implement and carry out this settlement

107   Mr. Ali, who had been active in the Tacoma Community as a community activist, became known to the TPD, and its officers resented his membership in the Islamic community.  A conspiracy developed among Tacoma Police officers, initially Ross Mueller, Amy Boardman, William Lowry, and Ann Crandon among others, to target the Muslim community, especially Abdullah Ali and his family.  At the time of Minister Farrakhan's

32

LAW OFFICES
**LEMBHARD G  HOWELL, P S**
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

visit, Cory Thomas was living with his uncle, Abdullah Ali, at his residence  He too was brutalized when the officers came to the Ali home

108  At roll call for the TPD, officers would brief other officers regarding the Ali family and Cory Thomas as to their location and maintaining a record of their activities TPD headquarters had a picture of Cory Thomas and Abdullah Ali. Information was spread among members of the TPD in the Hilltop area, interoffice e-mails circulated among TPD officers identifying Mr Ali and his family as "Troublemakers" and video cameras by Officer Bucklin videotaped the home of Abdullah Ali without probable cause or reasonable suspicion of any criminal activity

109  Defendant O'Keefe talked to Cory Thomas about being represented by Monte Hester  The only persons who knew this were those officers in the Chief's office  Yet the information trickled down to a patrol officer  The Ali's filed a number of complaints with TPD, many concerning Officer Baker  Sgt Peck conducted an investigation, which was a sham, designed to cover up Baker's actions, rather conduct a true investigation  Sgt Peck and Officer Baker conspired to harass, intimidate, and deny the Ali's of their constitutional rights, and then they conspired to cover up their unconstitutional, illegal activity

110  The purpose of the conspiracy was to harass and intimidate Abdullah Ali, members of the Ali family, and other Muslims in the Tacoma community because of their religion and race. The Ali's have exercised their Constitutional rights to peacefully assemble and petition the City and TPD for redress of grievances  The conspiracy included several illegal arrests and malicious prosecutions by TPD officers against the Ali's (set out above) culminating in the incident on May 19, 2000. The May 19, 2000 incident demonstrated the

33

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

participation and the role of the various officers  The actions by Sgt. Peck both before, during and after the incident of May 19, 2000, demonstrated that he organized the conspiracy with respect to reporting the May 19, 2000 incident  Rather than having each officer independently write his or her own report, Sgt Peck coordinated the officers to prepare reports which were consistent with each other in order to prevail in prosecuting crimes against plaintiffs

111     Shortly after Offices Luke and Clammer had given Cory Thomas a ticket for driving while license suspended, Sgt Frost came to 1207 S. 16th Street and saw the inoperable condition of Cory Thomas' car and knew that the same was not operating  Sgt Frost permitted both Officers Clammer and Luke to testify at a criminal trial of Mr Thomas that the vehicle was in fact operable  Sgt Frost took no action against these officers, even though he knew they had perjured themselves

112  On several occasions when Abdullah Ali left his home, TPD officers arranged to have Officer Bucklin nearby, so Mr Ali could be arrested for violation of a court order regarding his close proximity to her.

113  When Officer Tennyson charged Cory Thomas with reckless driving and arrested him, a number of officers just happened to be present, namely Baker, Lt Justice, Sgt Scruggs from Internal Affairs and Det Krause

114  City Prosecutors who worked for the City Manager arranged for officers to arrest Cory Thomas when he showed up in Court on other matters

115. TPD officers prepared reports and cited or charged for every encounter with Abdullah Ali and Cory Thomas on practically a weekly basis  The officers reported citations

34

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

were done in a effort to "make book" on them, and not because of any illegal activity. Mr Ali and Mr. Thomas had been engaged in, but because the officers were conspiring against them. TPD officers used the euphemism "trouble makers" and even suggested that the plaintiffs deliberately violated traffic laws to create an encounter between plaintiffs and TPD officers. Officers Tennyson and Hoffner called Cory Thomas' employers and visited his place of employment in an effort to have Cory Thomas terminated from his employment

116. The purpose of the conspiracy is to harass and intimidate the plaintiffs to prevent them from political, social, and religious activities related to Mr. Ali's role in the NOI The harassment and intimation started from the time that Mr. Ali invited NOI Minister Farrakhan to Tacoma in 1990 and it has continued up to the present It is not precisely known who all the members of this conspiracy are, but it at least included from the beginning Officers Lowry, Mueller, Edmonson, Boardman, and Crandon, among others Officers Lowry, Mueller, Boardman and Crandon were defendants in Mr Ali's 1992 complaint Other purposes of the conspiracy were to retaliate against Mr Ali and his family for filing the compliant, and to intimate and harass Mr Ali and his family to prevent Mr Ali from bringing additional lawsuits. In addition to these officers, others have joined the conspiracy since its inception They include Sgt Peck, Officers Baker, Tennyson, Luke, Bundy, Bucklin, Clammer, Anderson, Clarke, and numerous other officers including sergeants Even Officer Bucklin, who alleged that she was being harassed while on duty by Cory Thomas and Abdullah Ali, chose to remain on patrol in the Hilltop area rather than be transferred to another area of patrol in Tacoma Plaintiffs were singled out as representatives of Abdullah Ali's family because of Mr Ali's involvement in NOI The

35

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

numerous incidents culminating in the one on May 19, 2000 show a pervasive conspiracy orchestrated in large part by Sgt Peck who conspired with officers under his supervision to deprive the plaintiffs of their civil rights Ray Corpuz, Mayor Ebersole, James O Hairston, and assistant chiefs and sergeants in the TPD knew of this conspiracy. They had the ability to prevent and thwart the conspiracy, but they did nothing Their inaction constitutes a gross and reckless disregard for the rights of the plaintiffs

117 City of Tacoma Police Department, Tacoma Chief of Police James O. Hairston, Tacoma Mayor Brian Ebersole, Tacoma City Manager Ray Corpuz and Tacoma Police Officers Kristi Bucklin, Nathan Clammer, Terry Krause, Robert Luke, David Peck, Steve O'Keefe, Robert Baker, Joe Bundy, Ronald Tennyson, Todd Terhar, David Anderson, Sheppard Clarke, Keith Miller, John Bair, Daniel Grant and Michael Rowbottom have violated 42 U.S C §1985 because they have conspired to deprive plaintiffs (1) of the their civil rights guaranteed under the United States Constitution, (2) of the equal protection of the laws, (3) of equal privileges and immunities under the laws, and (4) of having and exercising any right or privilege of a citizen of the United States The gross and pervasive denial of plaintiffs' civil rights were the result of a combined and conspired effort of the defendant police officers Based on the combined and conspired effort of the individual defendants, the individual defendants engaged in a course of conduct with a mutual purpose, objective and knowledge that they would deprive plaintiffs of their rights, privileges and immunities, as guaranteed by the Constitution of the United States and the Washington State Constitution, and would further discriminate against plaintiffs because of their race in violation of their rights to equal protection and benefits as a United States citizen The

36

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

purpose of the conspiracy was to harass the plaintiffs and intimidate the plaintiffs in the exercise of their religious beliefs because were Muslim and followed the Islamic faith

## COUNT 5 (DEFENDANT OFFICERS' AND OFFICIALS' VIOLATION OF 42 U.S.C. §1986)

118. Plaintiffs reallege each and every allegation in the preceding paragraphs

119. Each individual defendant has violated 42 U S C §1986 because they had knowledge of the 42 U S C §1985 conspiracy as alleged above and had the ability to prevent the conspiracy or conspiracies, but failed to do so As a result of the defendants' actions or inactions, plaintiffs were injured

## COUNT 6 (INVASION OF PRIVACY)

120. Plaintiffs reallege each and every allegation in the preceding paragraphs

121 Defendants are liable of the tort of invasion of privacy:

A) Defendants made unwarranted intrusions into the plaintiffs' private activities, affairs, and seclusion Defendants' intrusion was highly offensive As such, plaintiffs were injured and damages as a result of defendants' conduct,

B) Defendants placed plaintiffs into a false light by publicizing criminal and other allegations against plaintiffs, which were false Defendants knew of or recklessly disregarded the falsity of the publication and the false light in which the plaintiffs would be placed Defendants criminal and other allegations against plaintiffs were highly offensive to plaintiffs, and would be highly offensive to a reasonable person As such, plaintiffs were

37

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

injured and damaged as result of defendants' conduct

## COUNT 7 (NEGLIGENCE)

122 Plaintiffs reallege each and every allegation in the preceding paragraphs

123 City of Tacoma is liable for negligently, recklessly or willfully a) retaining defendant officers knowing their likelihood to commit wrongful acts against civilians, b) failing to promulgate sufficient rules and standards; c) failing to properly discipline its officers, and d) failing to establish proper practices and procedures to determine its officers' psychological fitness for duty  As a result of defendant's negligence, plaintiffs suffered damages

## COUNT 8 (FALSE ARREST)

124 Plaintiffs reallege each and every allegation in the preceding paragraphs

125 Defendants' actions and inactions, including defendants' arresting plaintiffs without probable cause, constitute common law false arrest, which resulted in damages to plaintiffs

## COUNT 9 (TORT OF OUTRAGE)

126 Plaintiffs reallege each and every allegation in the preceding paragraphs

127 Defendants' actions and inactions constitute the common law tort of outrage, which resulted in damages to plaintiffs.

## COUNT 10 (MALICIOUS PROSECUTION)

128 Plaintiffs reallege each and every allegation in the preceding paragraphs

38

LAW OFFICES
LEMBHARD G  HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

129. Defendant Officers and the City of Tacoma maliciously prosecuted plaintiffs, which resulted in damages to plaintiffs

## COUNT 11 (INTERFERENCE WITH PROSPECTIVE ADVANTAGE OR BUSINESS EXPECTANCY)

130 Plaintiff Mr Thomas realleges each and every allegation in the preceding paragraphs

131 Officer Tennyson knew Mr Thomas was employed with CED and gave false information to CED with the purpose of terminating Mr Thomas' employment, causing economic damages to Mr Thomas

## COUNT 12 (DEFAMATION)

132 Plaintiffs realleges each and every allegation in the preceding paragraphs

133 Defendants made false and defamatory statements against plaintiffs, causing damage to plaintiffs

## COUNT 13 (ABUSE OF PROCESS)

134 Plaintiffs realleges each and every allegation in the preceding paragraphs

135 Defendants used the criminal and civil legal processes against plaintiffs in order to intimidate, harass, and penalize plaintiffs when the plaintiffs have not committed any wrongdoing, causing damages to plaintiffs

LAW OFFICES
LEMBHARD G HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623-5296

## DAMAGES

136  As a result of defendant officers, defendant City and each of the other officers' actions, the plaintiffs suffered physical injuries, personal suffering, emotional stress, pain and suffering as well as economic suffering and hardship

WHEREFORE, plaintiff seeks the following relief

1  Special  damages in such amount as shown at trial.

2  General damages in such amount as shown at trial

3  Punitive damages in such amount as shown at trial

4  Reasonable attorney's fees.

5  Costs and disbursements herein

6  Interest on each item of damages from the date incurred until paid at the maximum statutory rate

7  Such other and further relief as to this court seems just under the circumstances

DATED  November  9 , 2001

LEMBHARD G. HOWELL, P.S

LEMBHARD G HOWELL
WSBA #133
Attorney for Plaintiffs

40

LAW OFFICES
LEMBHARD G  HOWELL, P S
PACIFIC BUILDING, SUITE 2105
720 THIRD AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 623 5296