HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CORY L. THOMAS; ABDULLAH ALI; MUHAMMAD ALEXANDER; and ISMAIL RAHMAAN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TACOMA, a municipal corporation; TACOMA POLICE DEPARTMENT; NATHAN CLAMMER; ROBERT LUKE; DAVID PECK; STEVE O'KEEFE; ROBERT BAKER; RONALD TENNYSON; DANIEL GRANT, MICHAEL ROWBOTTOM,<br><br>Defendants. | Case No. C01-5138 RBL<br><br><br><br>ORDER GRANTING ATTORNEYS' FEES |

This matter is before the Court on remand from the Circuit Court, which affirmed in part and reversed in part this Court's denial of cross motions for attorneys' fees. The Circuit Court ruled that the trial court properly denied the defendants' motion for attorneys' fees but wrongly denied the plaintiffs' motion for attorneys' fees. The Circuit Court concluded that the trial court failed to apply the correct legal standard to the question at hand, and that it abused its discretion when it denied an award of attorneys' fees notwithstanding one plaintiff's (Cory Thomas) clear victory on one of his claims for relief. The Circuit Court has directed the trial court to determine a reasonable fee for the prevailing plaintiff on this claim.

FACTUAL BACKGROUND

In its "Order on Applications for Attorneys' Fees" this Court began by stating that "[t]he factual background to these Motions is well known and will not be repeated at length." [Dkt. #737 at 1]  In hindsight, it was a mistake to abbreviate the factual background of this case.  The Court was reluctant to inflame passions by candidly characterizing the conduct of Cory Thomas in this saga.  Moreover, the Court did not want to say anything in its decision that would undermine the Court's conclusion that justice was best served by the defendants not recovering fees from plaintiffs.  Finally, the Court was wrong to assume that the complete record of proceedings before this Court would be presented to the Circuit Court for review.

The case of *Thomas v. City of Tacoma* began with four citizens asserting 175 claims of civil rights violations against 27 individual and institutional defendants arising out of 45 incidents.  In pre-trial motions, 142 of the 175 claims were dismissed.  Ultimately, three plaintiffs went to trial with 33 claims against eight defendants involving seven incidents.  Following a five week trial, a jury returned a verdict in favor of defendants on all claims save one.  That claim was a false arrest claim asserted by one plaintiff - Cory Thomas - against one defendant - Ronald Tennyson.  The jury awarded Cory Thomas $15,000 in compensatory damages and $20,000 in punitive damages in that single claim.

Upon the return of this verdict, the next phase of this bifurcated case was to commence immediately.  Since Officer Baker had been exonerated of all claims against him, Phase II against the City of Tacoma for its hiring and retention of Officer Baker was eliminated.  Phase III was to be defendants' counterclaims against plaintiffs for malicious prosecution.

The only plaintiff with assets was Abdullah Ali.  He owned a home in which he resided with his family.  Ali and his son, Muhammad Alexander, lost on each and every claim they made.  In an effort to possibly spare the Ali home from potential judgment creditors, this Court exercised its discretion[1] and postponed Phase III for several months and ordered the parties to participate in a settlement conference conducted by a magistrate judge.  That conference resulted in a settlement that required (1) Cory Thomas

---

[1] Federal Rule of Civil Procedure 1 directs that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."  According to Professors Wright and Miller: "there probably is no provision in the federal rules that is more important than this philosophical mandate.  It reflects the spirit in which the rules were conceived and written . . . The primary purpose of procedural rules is to promote the ends of justice."  In achieving the goal of justice it has been said that "it is not an exaggeration to say that the keystone to the effective functioning of the federal rules is the discretion given to the trial court."  4 Fed. Prac & Proc. Civ. 3d § 1029.

ORDER
Page - 2

to pay a portion of his judgment to each of the individual defendants, (2) the defendant - City of Tacoma - to pay Thomas $10,000, (3) Cory Thomas to vacate his judgment against Officer Tennyson, and (4) the defendants to dismiss their malicious prosecution claims against Ali, Alexander, and Thomas. This was the procedural status of the case when the parties filed their cross-motions for attorney fees.

The Court also found one substantive matter to be relevant in deciding Cory Thomas' motion for attorney fees. The only credible evidence on the subject demonstrated that Cory Thomas instigated many of the confrontations he and his family (Ali is Thomas' uncle and Alexander his cousin) had with the police. Indeed, Thomas initiated the very encounter (2-21-01) that resulted in his award. Thomas was driving a tow truck for his employer on Highway 16 near Gig Harbor, Washington when he spotted Officer Tennyson in his patrol car. Thomas pulled in behind Tennyson and began tailgating. He was driving erratically and perilously close to Tennyson. While driving in this manner, Thomas was also making gestures at Tennyson indicating his extreme displeasure with Tennyson. Tennyson recognized Thomas and as he pulled over to let Thomas move in front of him, Thomas suddenly exited the highway. Tennyson contacted the tow truck owner and confirmed that Thomas was driving the truck at the time of day and in the vicinity of the encounter. Thomas was then arrested at the Courthouse immediately following a court appearance on another matter. Gratuitously, Tennyson then went back to the employer to inquire whether Thomas would be fired for his actions. Thomas was ultimately acquitted of the reckless driving charge, though his employment was terminated.

Indicative of Thomas' habit of provoking confrontations with police, in another incident (12-9-00), Thomas drove by a group of police officers investigating a neighborhood report of "shots fired." He drove by the officers at a very slow speed, glaring at the officers. He proceeded down the street about a block and turned around. Again, Thomas drove past the assembled officers at a slow speed, glaring at them. Suddenly, he accelerated rapidly, screeching his tires, in order to cause the officers to give chase. Two officers in separate vehicles did give chase. Thomas did not respond to lights, sirens or hand signals to pull over. Ultimately, he was stopped and arrested for eluding officers and resisting arrest. The charges were later dismissed. Thomas' false arrest claim for that incident was rejected by the jury in this case.

## DISCUSSION

I.  <u>Under the circumstances of this case, does the Trial Court have discretion to deny an award of attorneys fees to a prevailing plaintiff</u>?

The Civil Rights Attorney's Fees Award Act of 1976 provides:

> In any action or proceeding to enforce a provision of sections [42 U.S.C. §§ 1981 et. seq.] the Court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. Rep. No. 94-1558, p.1 (1976). Accordingly, a prevailing plaintiff "should ordinarily recover any attorney's fee unless special circumstances would render such an award unjust." S. Rep. No. 94-1011, p. 4 (1976). *See, Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In contrast, a prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. *Christiansburg Garmet Co. v. EEOC*, 434 U.S. 412, 421 (1978).

The decision to award attorney fees in a civil rights case involves a two-step process. The first step is a determination of "prevailing party" status. A plaintiff or defendant must be a "prevailing party" to recover an attorney's fee under § 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Our understanding of what constitutes a "prevailing party" has undergone refinement over the years since 1976.[2] The Supreme Court in 1989 settled on a definition of "prevailing party" which requires the plaintiff to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. *See Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782 (1989). In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court held that even a plaintiff who wins nominal damages is a prevailing party under § 1988. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). In so holding, the Court

---

[2] The early cases determined that plaintiffs may be considered prevailing parties if they succeed on any <u>significant</u> issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978). The proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought. *Taylor v. Sterrett*, 640 F.2d 663, 669 (5th Cir. 1981). In later cases, the Supreme Court determined that to be a "prevailing party" the plaintiff must obtain relief that affects the behavior of the defendant toward the plaintiff, *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) and to be considered a prevailing party the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant, *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782 (1989).

ORDER
Page - 4

distinguished its prior opinion in *Garland* that stated "a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." 489 U.S. at 792.

In the case now before the Court, the parties and the Court concluded that Cory Thomas was a "prevailing party" on his one claim against Officer Ronald Tennyson. He therefore meets that "generous formulation" that brings him across the statutory threshold. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The second step in the process is for the trial court to determine what a reasonable fee award would be under the facts and circumstances of the case. Once civil rights litigation materially alters the legal relationship between the parties, "the degree of plaintiff's overall success goes to the reasonableness" of a fee award. *Farrar,* 506 U.S. at 114, citing *Hensley*. It is in its analysis of what would be a reasonable fee for plaintiff, Cory Thomas, that this Court has drawn criticism from the Circuit Court. Specifically, the Circuit concluded that this Court failed to correctly identify the central holding of *Farrar* and that it unreasonably expanded the language of *Farrar* beyond its intended scope.

At the time of its decision, the trial court did recognize and now expressly acknowledges that the central holding of *Farrar* provides that even a plaintiff who wins nominal damages or who obtains a technical or <u>de minimis</u> victory may nevertheless be a "prevailing party" under § 1988, so long as the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. As stated earlier, however, the status of "prevailing party" was not an issue as to Mr. Thomas and the "central holding" of *Farrar* was therefore of little interest to the parties or to the trial court in this case.

But as with every other court facing a petition for § 1988 attorney fees, the *Farrar* Court also followed a two-step process. Of particular interest to this Court was the *Farrar* assessment of what is a reasonable fee under the circumstances where plaintiff recovered very little compared to what he sought in the litigation. This Court, identifying and applying the same test the Circuit Court prescribed,[3] questioned

---

[3]The Circuit Court stated: "The proper analysis requires that a prevailing plaintiff only be denied an award of attorney's fees when special circumstances exist sufficient to render an award unjust." *Hensley*, 461 U.S. at 429. In applying the "special circumstances" exception, we focus on two factors: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of equities favors or disfavors the denial of fees." *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999). The trial court, on the other hand, stated on two occasions that a prevailing plaintiff should ordinarily be awarded his fees, unless some special circumstances are shown that would make the award manifestly unjust. [Dkt. #737, at p. 3 and p. 6] The trial court found "that such circumstances are present in this case." [Dkt. #737, at p. 6]

ORDER
Page - 5

whether its discretion went so far as to permit it to award no fee if it determined that no fee was the just result. Based upon the language of the statute, the legislative history and the sentiments expressed in the majority and concurring opinions of *Farrar,* this Court wrongly determined that it did.

The statute, of course, says that the trial court may, in its discretion, award attorney's fees to the prevailing party. The legislative history provides that a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S. Rep. No. 94-1001, p. 4 (1976). Quoting *Hensley*, the *Farrar* Court stated:

> Having considered the amount and nature of damages awarded, the Court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness . . . or multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate."

506 U.S. at 115. The *Farrar* Court did say that a plaintiff who seeks compensatory damages but receives no more than nominal damages is oftentimes the type of prevailing party who should receive no attorney's fees at all, 506 U.S. at 115. But it did not suggest, as does the Circuit Court, that such a "prevailing party" is the only type of plaintiff who should be denied fees. Instead, Justice O'Connor, in her concurring opinion said it best when discussing the "special circumstances" exception to the rule that a prevailing plaintiff ordinarily is entitled to recover fees:

> "While that exception to fee awards has often been articulated separately from the reasonableness inquiry, sometimes it is bound up with reasonableness: It serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all. <u>After all, where the only reasonable fee is no fee, an award of fees would be unjust; conversely, where a fee award would be unjust, the reasonable fee is no fee at all.</u>" (emphases added).

506 U.S. at 118.

From these readings, and from Justice O'Connor's and Justice White's confirmation of the wide discretion afforded to the trial court, this Court concluded that it would not abuse its discretion by determining that, in this case, under these circumstances, the reasonable fee is no fee at all. The trial court, armed with the knowledge that allowing attorney fees in this case would offer encouragement for lawyers to handle future civil rights cases, nevertheless concluded that the balance of equities favored the denial of fees. The Court expressed that conclusion by referring to the windfall that would result if the Court granted plaintiff's fee request. [Dkt. #737, at 7] The Circuit Court was critical of the trial court's rationale,

declaring that while granting a windfall to plaintiffs was a concern echoed by Congress in enacting § 1988, Congress balanced that concern against the need to attract competent counsel to prosecute civil rights cases. The concern for windfalls, it said, is therefore adequately and fully accounted for in a <u>reasonable</u> fee award. Citing *City of Riverside v. Rivera*, 477 U.S. 561, 579-80 (1986).

The Circuit concluded that requiring defendants to pay reasonable attorney's fees relevant to the prosecution of Mr. Thomas' successful claim does not create a windfall but fulfills the Congressional purpose of § 1988(b). Nothing said in *City of Riverside*, however, compels the conclusion that a fee must be awarded to a plaintiff who prevails on a claim in more than a nominal or technical sense. To the contrary, the Court in *City of Riverside* listed the "special circumstance" exception as one of the tools available to the trial court in "protecting against the possibility that § 1988 might produce a 'windfall' to civil rights attorneys." 477 U.S. 561, 580-81. The Supreme Court in that case suggests that preventing a windfall is a legitimate reason for invoking the "special circumstances" exception and for awarding no fee if the trial court determines in its judgment, that the reasonable fee is no fee at all.

Ultimately, the Circuit Court has determined that this Court abused its discretion in awarding no fees to plaintiff. It has determined that the portion of the *Farrar* decision recognizing that a trial court can properly and reasonably award no fees when the plaintiff's success is purely technical or <u>de minimis</u> represents the outer marker of the trial court's discretion in awarding no fees to a prevailing plaintiff. Put another way, the Circuit Court opinion requires that whenever a plaintiff's success is more than purely technical or <u>de minimis</u>, attorneys' fees must be awarded, even when the trial court believes the award is unreasonable, unjust and represents a windfall to plaintiff or plaintiff's counsel.[4] Such a result renders the "special circumstance" exception more theoretical than real and significantly diminishes the trial court's discretion over such matters.

II. <u>What is a reasonable attorney fee award in this case</u>?

Counsel for plaintiffs have submitted affidavits outlining attorneys' fees in the amount of $488,174.35 incurred in prosecuting this action on behalf of all plaintiffs. Total out-of-pocket costs were $60,419.79. The Court has reviewed the hourly rates charged by the lawyers and paralegal and find the

---

[4] On the other hand, a recent Ninth Circuit opinion strongly suggests that an award of nominal damages, while triggering "prevailing party" status will seldom support an award of attorney fees under § 1988. *See, Benton v. Oregon Student Assistance Commission,* 2005 WL 2036224 (9th Cir. (Ore.)).

ORDER
Page - 7

rates to be reasonable. The Court also accepts the representation of total hours expended on the case as accurate. As the Circuit Court has noted, "[b]ecause plaintiff 'achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" (citing *Hensley*, 461 U.S. at 436) (emphasis added). In light of plaintiff's limited success, Cory Thomas requests that the Court award him his attorney fees in the amount of $244,087.17 (one-half of the total fees incurred) together with costs of $60,419.79.

Where a prevailing plaintiff achieves only partial or limited success, the district court's inquiry into what is a reasonable attorney fee award is more searching, though it should not result in a second major litigation. A two-part test is employed to determine (1) whether plaintiff prevailed on unrelated claims (hours expended or unrelated, unsuccessful claims should not be included in an award of attorney fees), and (2) whether plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

To determine whether the claims are related, the trial court should focus on whether the claims on which plaintiff did not prevail "involve a common core of facts or are based on related legal theories." *Id*. To the extent the claims are related, plaintiff should recover reasonable fees for pursuing those claims. Even if the claims are not related, however, the time is not automatically disqualified from inclusion within a fee award. Work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims.

The Circuit Court notes that "the bulk of discretion retained by the district court lies in the second, significance of relief inquiry." If it is impossible to isolate the truly unrelated claims, the district court should instead reflect that limited success in the second step. *Webb* at 1169. At the heart of this inquiry is whether plaintiff's accomplishments in the case justify the fee amount requested. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1142 (9th Cir. 1986). "There is no precise rule or formula for making these determinations." *Hensley* 461 U.S. at 436.

Ironically, in the case at bar, both sides in the litigation articulated the belief that the various incidents giving rise to the lawsuit were related even though occurring at different times, in different places, and involving different plaintiffs and different members of the police force. Plaintiffs alleged a conspiracy by the police department to persecute and harass members of the Abdullah Ali family. The

defendants claimed that the Ali family, armed with a police scanner, repeatedly chose to interfere with police activity conducted in the Hilltop neighborhood of Tacoma.

In the end, neither the trial court nor the jury linked these incidents as part of a police department effort to violate the civil rights of plaintiffs. Similarly, although both Cory Thomas and Abdullah Ali had an uncanny knack for showing up at police activities unrelated to them, the plaintiffs denied having a scanner or using a scanner to alert them to police presence in their neighborhood. Neither the Court nor the jury made a finding that plaintiffs' involvement with police was part of a broader plan to confront police.

For purposes of this motion, plaintiff argues that all the claims are related by the need to demonstrate the extent of bad blood between plaintiff and police so that the jury could reach the correct outcome on the February 21, 2001 claim. While some historical perspective may have been useful to the jury, it cannot be said that 4-1/2 weeks of testimony was a necessary predicate for an incident that was fully described in approximately one-half day of testimony.

The Court determines that unlike the facts in *Webb*, where all conduct of the defendants grew out of one event, the various unsuccessful claims in this case are not related to the facts of February 21, 2001 and the claims do not involve related legal theories.

In determining a reasonable fee for the one claim Cory Thomas prevailed upon, the Court believes that a fee of $35,000 and a cost award of $4,331.83 fully complies with the purposes of § 1988 in promoting the vindication of civil rights claims through private attorneys. In arriving at these amounts the Court viewed the February 21, 2001 claim in isolation and applied Rule of Professional Responsibility (RPC) 1.5 which controls the reasonableness of attorney fees charged in Washington state. The Court also considered the additional factors enumerated in *Kerr v. Screen Extras Guild,* 526 F.2d 67 (9th Cir. 1975). For purposes of this Court's inquiry, the relevant factors included the following:

    a)    the time and labor required;

    b)    the novelty and difficulty of the questions involved;

    c)    the required skill involved;

    d)    the values involved and the results obtained;

    e)    the fees customarily charged in the locality for similar services; and

Page - 9

      f)      the experience, reputation, and ability of the lawyer or lawyers performing the services.

*See, Olsen Media v. Energy Sciences, Inc.*, 32 Wn. App. 579 (1982).

      a)      <u>Time and labor required</u>

The Court estimated that, although the February 21, 2001 claim was presented in one-half day or less, as a stand alone lawsuit it would have required two days to present to a jury. The Court estimated 14 hours of trial time. The Court then assumed five hours of preparation for every one hour of trial time. Total time to prepare and present the single claim - 84 hours.

      b)      <u>Novelty and difficulty of the questions involved</u>

There were no complex or novel issues involved in the claim of February 21, 2001. The law on false arrest is settled and the plaintiff was not required to advocate expansion of that law in order to prevail. Like most tort litigation, the principle issues involved the credibility of the witnesses and reasonableness of the conduct of the parties.

      c)      <u>Requisite skill</u>

The case required a level of basic competence common to all counsel authorized to practice before this Court.

      d)      <u>Values involved and results obtained</u>

Viewed in isolation, the results obtained by plaintiff in prosecuting the February 21, 2001 claim were excellent.

      e)      <u>Fees customarily charged in the locality for similar services</u>

The Court accepts the $300 per hour rate charged by Mr. Howell as reasonable and customary for legal services in this type of case.

      f)      <u>Experience, reputation and ability of the attorney</u>

Lembard Howell is a dedicated, capable and experienced lawyer in the field of civil rights litigation. He enjoys the respect and admiration of lawyers and judges alike. All plaintiffs in this case were fortunate to have him as their lawyer.

Taking all of these considerations into account, the Court determined that the sum of $35,000 in attorney fees is reasonable.

In assessing costs, the Court simply took the ratio of fees awarded ($35,000) to total fees incurred

($488,174.35) and applied that ratio to the total costs claimed ($60,419.79) and arrived at an award of costs in the amount of $4,331.83.

The Court hereby orders defendants to pay the sum of $39,331.83 in fees and costs, notwithstanding the Court's firm conviction that the balance of equities favors the denial of fees altogether.

Dated this 16th day of September, 2005.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE